DHS-Edall. Mr. LaPierre for the balance, Mr. Glover for the appellate. Mr. LaPierre, good morning. Good morning, Your Honors. This is LaPierre    on behalf of the Appellates Collectively Statewide. Your Honor, we have in front of us today a set of inch-related cases with a series of issues that kind of build off of each other as we go through. They were all decided as a matter of law below and are being reviewed de novo here today. Your Honor is asked that we be prepared to address initially the issue of whether or not the agency action at issue, collection of bodies determination that have an untimely but accepted appeal to the AO is final. And that is an issue, Your Honors, that's very related to many of the other issues within this particular case. It is axiomatic that the APA permits only review of agency actions that are final. And an agency action is final if it is a confirmation of the agency's decision-making process. And it is an action for which rights or obligations have been decided or legal consequences flow. If a task is simply ministerial and not discretionary, then it is obviously not part of the decision process. Generally speaking, Your Honor, it is true that collection actions are not the final agency action because they are simply the execution of the agency's decision-making process. The collection of the decision has been made. The facts of this case, however, Your Honor, are very specific and those of which do render the agency's action, DHS's actions, in collecting on these bodies determinations the final agency action. The issue is, as it has been held before, that an agency's action is final when it is subject to no further review within the agency. Here, Your Honors, there is a determination that the breach has been or that a bond has been breached and there is a process by which appeals are permitted within 33 days. And under the statutes in question, there is a final breach determination if there is no appeal within that 33 days. However, Your Honors, afterwards, there is provision for the submission of the filing of an untimely appeal. And the regulations are very clear that the filing of motions to reopen reconsider do not render the decision non-final. So at that point, we still have a final agency decision. However, once the AAO has determined that the untimely appeal meets certain requirements and they have accepted it, the regulations require that there be a decision on the merits of that particular appeal. And it is our position that once there is an accepted appeal, untimely appeal, and a decision on the merits has to be made, the agency action is no longer final. Thus, when the DHS goes behind the AAO and determines that they're going to collect on bond breaches with untimely appeals that they determined are going to be ultimately rejected and collect on them, moving out the appeal, that becomes a final agency action because there's no further review at that point. The money is collected. The property is lost. The legal consequences have flown from that decision. And there is no further agency review. The defendants have asserted in this case, DHS has asserted in this case, that that is subject to court review in district court cases. And that's a matter for the determination of whether or not due to court review and that this particular action of collecting for each bonds that have an untimely but accepted appeal to the AAO is final. What is your evidence that this has been accepted? I have all, we've gone back and looked at these different forms that have been put in the record and not one indicates that DHS has done anything with your untimely appeals except to tell you that they've received the appeal and that it's pending. And I think there was, before the district judge, a notice of transfer, but I see nothing that supports your saying there's some category called accepted appeals, accepted late appeals. Yes, Your Honor. There's actually no direct evidence in the record in these particular three cases. That was an issue raised more fully, I believe it is, in one of the other two cases that's currently still in the district court. But the cases have been limited to only those that have been accepted by the AAO. And it was something that was simply accepted within the underlying cases. No evidence was presented as to that matter. And Your Honor, moving to the issues directly on appeal here, there is a concern that, I'm sorry, the district court erred in finding that DHS acted in accordance with their regulations in collecting these broad breach determinations. And that is part of the core underlying issues in this case. Mr. LaPierre, before you go on, I'm sorry, I want to take you back a moment. Yes, of course. You said there's no evidence in the record that any of the cases, your late filings, were reopened, essentially, correct? Yes, Your Honor. That was not a litigated issue. So, finality apart, what's your basis for standing here? Again, Your Honor, it was simply accepted that there was accepted appeals and that was what we were doing. There was no evidence presented. What do you mean, it was simply accepted? By whom? That's actually just the statute, the status from which the case flowed. It was assumed that we were discussing only those appeals that had been accepted and there was no evidence on that issue, Your Honor, because it was not litigated. Who did the assuming? All parties, to my knowledge, all parties in the court, Your Honor. That was simply what was addressed. Did they say so? Again, I don't believe, Your Honor, it was directly litigated, so I don't believe that issue was raised. Can I ask maybe kind of a 10,000-foot question, putting aside the mailbox rule issue? You know, you're a sophisticated company. You've got a staff. If you had filed your appeals on time, would we be here? Your Honor, there's actually a couple of underlying issues here that lead to that. Part of that is obviously the mailbox rule, which we are setting aside. Another part of that, Your Honor, is that the reason these appeals were filed late was there was actually an intervening change in law that rendered the underlying notices to produce the alien, notices to produce the bonded immigrant, that rendered them ineffective or, in our position, legally inoperative. And that's the Perrier case, the United States v. Perrier case, that said that bond notices to produce, or notices to appear, I apologize, given to bonded immigrants that do not have a date and time or place to appear were not statutorily sufficient. And that has been subject to some continued and evolving case law after that, Your Honor. That was the reason they were untimely, is that the bond breach determination occurred, that change in law occurred, and these appeals subsequently were filed based on that change in law, new facts that were argued. So, no, Your Honor, there was no way for them to be timely appealed. That's the first set of those. And then there's some, obviously, concerns related to some later appeals that were filed in the mailbox rule issue. Well, that sounds like a retroactivity argument in terms of how to interpret that intervening case. It does sound like that, Your Honor. However, they were stating that they were never appropriate, they were never complete, and that was the issue that we were going with. And it did apply, in a sense, to all outstanding bond breach determinations. That was raised on the appeal. And raised that question before bond breaches that then were accepted and were going to be, I'm sorry, rendered indecision on the merits of that particular argument. So, Your Honor, looking at the process by which DHS or the AAO operates, there is a series of related CFRs, federal regulations, that actually apply. CFR, I'm sorry, CFR section 103.6E states that a final determination that a bond has been breached creates a claim in favor of the United States. And that, Your Honor, is a central issue here. As I stated earlier, that when there is no appeal within 33 days, a bond breach becomes final. That's ACFR 103.3A2I. The regulations permit that a party may file an untimely appeal, that if it meets certain requirements, will be accepted, and once accepted, a decision on the merits is required. And it is our position that a final decision is not final unless it ends the litigation, leaves the agency with nothing left to do. When there is an outstanding decision to be made on the merits of an untimely appeal, it is our contention that there is no final determination that a bond has been breached and there is no claim created within the United States for the DHS to collect on. In our opinion, in our position, that the District Court can rule that DHS can take part of this regulation collecting on untimely but accepted breach determinations, breach determinations of an untimely but accepted appeal. And that leads to- But again, you have no evidence that they've been accepted. No, Your Honor. That was not something we had put evidence within the record on. So your description of your status is incorrect. And we have the provision that says an appeal doesn't delay the execution of any decision. Yes, Your Honor. However, the alternative is simply that if they do not meet the requirements, they are not accepted. They are dismissed for lack of jurisdiction. That has not occurred at any point. And I believe that was actually the only thing we had in the record, Your Honor, was that they had not been dismissed for failing to meet the requirements. They had simply been accepted into the DAO's Court of Appeals. I'm sorry, into the DAO's agency. So this policy may not affect you ever because you may never have a case reopened. There is some evidence that we have had some. Again, that's not directly in these cases, Your Honor. It may be true that the courts decide to reject all of these appeals, but that would be a decision on the merits, Your Honor, that the appellant statewide is entitled to under the statutes and being denied when the collection occurs and the cases or the appeals are moved. Wait a minute. You will get a decision on the merits only if they reopen the case, right? Yes, Your Honor. We have not reopened any of these three cases. Have they reopened any other of your cases? There is no evidence on the record. I can say, Your Honor, yes, they have reopened some cases. I can't say the specific cases that we're discussing here have been reopened. I don't have that evidence in front of me since it was not placed in the record of the case. So on the record, there are no accepted late appeals? There is no evidence that these cases have been accepted on the record, Your Honor. However, that was, again, not a raised issue. It was simply not litigated on the cases below. I can see some reason, nonetheless, to entertain your case if the agency can keep these motions of yours perpetually unresolved, neither accepted and resolved on the merits, nor rejected. They're just pending. And you have some pending? Your Honor, the appeals on issue in this case are still pending, and they have obviously been filed for quite a while, more than a year. So our understanding is that they would have been rejected if they were not going to be accepted. But if, however, they are keeping them not accepted and yet not rejecting them as improper, I would say, Your Honor, that we are stuck in limbo. Exactly as you say, we should have a decision on these issues going forward. Well, is it your position that the language that says that any appeal or review or whatever doesn't affect the execution of a decision that I don't understand how you can ignore that? That's what DHS is saying gives them the authority to collect on these bonds. Yes, Your Honor. We are not ignoring that particular statute. We believe it has a purpose and application that should be respected however. We believe it falls within the spectrum and that there is final determination. The filing of an untimely appeal, which is treated as a motion for reconsideration, does not render it non-final. Collection can continue. But once accepted and a decision on the merits is due, then the decision is no longer final. And then that section does not apply anymore because we have an accepted untimely appeal that is required to receive a decision on the merits and therefore we don't have a final determination. But that's not your case. Yes, Your Honor. You don't have an untimely appeal on this record. Your Honor, it was not a litigated issue. It was accepted. We did have untimely appeals that had been accepted, at least to my knowledge, and so I believe that is what the record shows. Well, was it assumed, as you said earlier, or was it assumed sub salentia or is there some indication on the record that that was the premise on which the court... I apologize, Your Honor. Under my understanding, it was assumed sub salentia. There was no direct litigation on this particular issue. There was the argument that the DHS was making was that there was simply no difference because there was no termination of the statute that permitted them to continue to collect. Their position was that this was simply once the appeal had not been filed, they were free to collect until there had been a decision that overturned it and then they could return the funds or not. The position that the plaintiff is taking is that once they're entitled to a termination of the merits, they are no longer entitled to collect. I believe that kind of runs to the issue here, Your Honors, which is that if you interpreted the statutes the plaintiff's way, then we have accepted untimely appeals that occur to do a decision on the merits. If you accept the defendant's, DHS's arguments that they are entitled to collect irrespective of whether an untimely appeal is filed, accepted or not, then, quite frankly, it becomes an irrelevant issue and that's maybe the underlying reason why it was never fully litigated. Have you referred us to any situation or are you aware of any situation in which an agency order is final, the time for appeal has run, and it then becomes non-final? Your Honor, I'm unaware of any other regulation with this specific factual situation. I understand that the regulation, HCFR 103.6E, states that a final determination creates the claim in favor of the U.S. and once there's a termination on the merits that is due, I do not believe there is a final determination of bond breach, therefore there is no claim and so the right to collect evaporates at that point. That appears to be a fairly unique situation I was unable to find any apposite case law on. I just want to look at the complaint for a moment, paragraph 17 of JA-19. Plaintiffs appealed multiple declared bond breaches and these appeals have been treated as a motion to reopen. Yet the defense have refused to cease enforcement regarding these declared bond breaches that are under the appeal process. Okay, so that's all you've alleged. I'm sorry, Judge Ginsburg, I did not hear you. That's all you've alleged that you've got in paragraph 17 here on page JA-19. You allege that you have multiple declared bond breaches appealed and the appeals have been treated as a motion to reopen within the legal process. Nothing, I mean you didn't plead that or in any way suggest that there had been or were pending or were at the time any cases that had been subject to reconsideration or had been reopened. Your Honor, under the statute an untimely appeal that meets the requirements is then treated as a motion for reconsideration to reopen and a decision on the merits is due. The allegation within the record that they have been treated as motions for reconsideration or rehearing actually is the allegation that they have been accepted for review and a decision on the merits is due. They haven't, but there is yet an actual acceptance yet to come, correct? Again, Your Honor, they're either rejected as untimely or they are accepted and they become treated as a motion to review. It's one or the other. Neither has happened yet. Our understanding, Your Honor, is that and the allegation is that they have been accepted implicitly within the statement that they have been treated as a motion for reconsideration. Where is that allegation? It's the allegation that we have multiple appeals in paragraph 17 that have been treated as motions to reconsider and a decision on the merits is therefore due. If they had not been accepted, had not been treated as motions to reopen and reconsider there would be no decision on the merits that is due. So that allegation itself is implicit that we have been accepting appeals that are at issue, Your Honor. And under the procedural posture that we're at, are motions to dismiss and motions for general pleadings, the pleadings themselves are accepted as true. And all logical inferences therefrom are accepted. And I believe it must specifically state we have accepted appeals. It does state we have appeals that have been treated as motions to reconsider and a decision due on the merits. So therefore, that is the allegation. The inference is that they have been accepted and are due their decision on the merits, Your Honor. Okay. With regard to your due process argument, I just have one quick fact question on that. You talked about the effect on your fail rate. And I'm wondering if, is your fail rate affected when let's see, there's a breach determination that you timely appeal. In that situation, the appeal hasn't been decided yet. Is your fail rate affected? No, Your Honor. At that point, we have no final determination that a breach has occurred. And therefore, the fail rate is not affected. Obviously, once the appeal is decided, one way or the other, the fail rate follows the decision. Thanks. That's all for me. All right. And we'll hear from Mr. Glover. Good morning, and may it please the court. I'm Matthew Glover, and I represent the government. Unless the court would like to start somewhere else, I'll start with the final agency action question that was raised by the court. The government's position, which is longstanding by the Department of Homeland Security, is that a final bond breach determination is final agency action because under 8 CFR 103.6, it creates a claim in favor of the United States. That claim can then produce an invoice. The invoice has legal consequences. You have a certain period of time in which to pay that invoice. And so under the traditional Bennett versus Spear test, the final bond breach determination, which comes after a ruling on a timely appeal or after the time to appeal expires, is the agency's final determination that the bond has been breached, and it has legal consequences because it allows for collection, and it has created a claim right then in favor of the United States. Judge Henderson, I guess I can expand on the final agency action point, or I'd also like to respond to a few questions that were asked to plaintiffs. Certainly. Judge Henderson, you pointed out that there is no evidence of an accepted bond late filed appeal, and I think that's clear from the record, and I would point the court to, I believe, JA 113 to 114, which was attached to a declaration we submitted. It listed the, I believe, 391 then pending bond breaches that they had allegedly filed a late filed appeal on. It notes that I believe it's 72 we have responded to. I guess the declaration at the end of it is the original number and the 72 that we've responded to, and then at page JA 115, it gives our response to one of them. What happens is if you file a late filed appeal, the agency gets it, and when the agency acts on it, it's going to either give you notice, like at JA 115, that your late filed appeal is dismissed because it was late filed, or if it's treated as a motion to reopen or reconsider, you would get a ruling if that's a meritorious motion to reopen or reconsider that reopens or reconsiders the case, or you would get a notice that your motion to reopen or reconsider has been rejected. But as the regulations make clear, the filing of a motion to reopen or reconsider doesn't stay collection, and it doesn't stay any activities or the finality here. And so the other thing I would note on JA 115, just for some factual context, if you'll note there, that bond was appealed, I think, over 100 days after the final determination, but the appeal was filed September 28, 2018, and the notice that the appeal was late and it was being dismissed for not being late didn't come until January 28, 2019, so there's a four-month gap. During that four-month period, that late filed appeal was not accepted as a motion to reopen or reconsider, it was just lag in the agency getting to that appeal and ruling that that appeal was untimely and giving notice. I'm not aware of the agency, and I checked with the agency counsel before argument, ever sending a notice, as I believe Judge Henderson and perhaps Judge Ginsburg, you as well pointed out in the record, there are notices that we've received your appeal. I'm not aware of the agency sending something, and my client counsels weren't aware of the agency sending something saying, we've received your appeal, and we've decided to treat it as a motion to reopen or reconsider. Instead, it's treated as your filing of a motion to reopen or reconsider. If you merely filed one under 4305A2 or A3, we would acknowledge the receipt on the same form that we send for the filing of a late filed appeal, and we would rule on it, and you would receive a ruling on the merits that explains our reasoning, why we have rejected or accepted it, and gives you notice of sort of the further proceedings that might be available, because you can appeal the denial of a motion to reopen or reconsider. Judge Ginsburg, you're correct that there's no evidence in the record of any reopening. That potentially creates a standing problem, although I think the district court, after some initial arguments in these cases, came to the government's view that this is essentially a breach of contract that they would be asserting, and so they have a contract with the United States. We've declared it breached. They're saying that we failed to follow our regulations in how we declared it breached. I think it's plain from the district court's rulings, from the face of the regulatory provisions, and as I said, it's a breach of our regulations, but that's about all I would say on that. I'm happy to address the merits of some of our arguments if the court has further questions. Can you, Mr. Glover, can you talk about the case that Mr. LaPierre mentioned, whose name escapes me right now, and I had asked him whether that case was supposed to have retroactive effect on claims that were final and closed, and I guess I have the same question for you. Your Honor, I believe he's referring to Pereira v. Sessions, and below, the government made clear that Pereira v. Sessions, which pertains to defective notices to a peer, has no bearing on this case because a notice to a peer is issued directly to the alien. It's not part of the bond contract. In the bond contract at Provision G-1, the notice to produce an alien is given to the obligor, so to statewide or to the surety to the other obligor saying please produce this alien at this date and in this place, and it's only when they fail to produce them then that we would have a breach of the bond. So the notice to a peer pertains to immigration court proceedings, which are conducted by the Executive Office of Immigration Review, or EOIR, which is a part of the Department of Justice. The bond is a contractual agreement between the United States on behalf of ICE and the obligor, and so a defective notice to a peer simply has no bearing on this. I would also point out just to get into the merits a little bit of Pereira, every court of appeals to have addressed the issue since Pereira has held that the initial defective notice to a peer because it didn't give date and time does not strip the immigration court of jurisdiction. You just aren't allowed to apply the stop time rule because the immigration court didn't let you know then when your hearing would be. And I have some circuit citations on that issue. Again, that issue doesn't pertain here because notices to a peer don't have any impact, but I'm happy to give the court some sister circuit citations on that. The first one I would point to is Ortiz-Santiago v. Barr. It's 924 F3rd 956 at 958. It's a seventh circuit case from 2019. I believe it lists a handful of others and I won't overwhelm you with citations. So yeah, the notice to a peer will be issued well before the breach determination we made because typically when the government is issuing a notice to produce, it's because there's a final order of removal and they issue the notice to produce to have the person come to an ICE location to be removed. I'm happy to address any other questions that the court has, but I'm also happy to rest on our brief on the merits. I want to ask you to go back and to make sure I understand what in your view is the final action here. If I look at the notice of rejection at page 115, is that it? Your Honor, this notice of rejection at page 115 is the rejection of a late filed appeal. And so in this case, the final agency action is the bond breach determination and when they failed to appeal, I think it says you had 33 calendar days within which it was mailed on March 15th. We mailed it to you. It doesn't provide so 33 days or 34 days from March 15th. This particular bond, which ends in 598, this particular bond, the breach determination that was mailed on March 15th. That's the initial determination. It becomes final when no appeal is received within 33 days of March 15th. So if my math's right, I think that would be April 18th or April 19th somewhere in there. The failure to timely appeal makes the initial determination our final determination and that creates a claim on that date in April in favor of the United States. All right. Now that's the final determination from which which serves as final agency action. Yes, Your Honor. How is that a predicate for someone to come in here and complain that if they made a timely filing and were there... Pardon me. If they persuaded the board to reopen the case, which hasn't happened and may never happen, they would be... Pardon me. That this something here should stay the collection process, right? And because of something else that may happen or may not happen. Your Honor, I think you're drawing a distinction between their theory, which is that the late filed appeal stays collection and what the regulations make clear. And this is where the regulation concerning motions to reopen or reconsider. I think it's 306E or might be 305 103.6E or 105.6E 103.5E. Sorry. That makes clear that the filing of a motion to reopen or reconsider does not stay enforcement of the order, which includes collection, and it also includes, in some cases, the notice of departure for an alien. The best analogy I could think of in preparing for argument are, I guess, two analogies. One would be a district court ruling. So the district court issues an order, a memorandum opinion, and an order. In this circuit, they can be in the same document. In the Seventh Circuit, they have to be separate. But from the issuance of that order, you have a final decision. If it's a money damages claim, the prevailing party can collect their money damages from the issuance of that order. If you were to file a motion to reopen or reconsider a Rule 59E or Rule 60B motion, the district court would need to rule on those motions, but absent the district court granting you a stay or you seeking a stay from the appellate court if the district court denies it, the collection continues. And so that's the situation we have here. We have a final claim in favor of the United States. If they were to just directly file a motion to reopen or reconsider rather than a late filed appeal, that wouldn't stay our ability to collect. It wouldn't alter the claim in favor of the United States. And the other example I would give is in the Board of Immigration Appeals, which hearings, appeals from immigration judges on asylum withholding, CAT, you can appeal one of those under 8 U.S.C. 1225 directly to a court of appeals. Now, I know this circuit doesn't tend to have those cases. I'm not aware of any in the circuit, but other regional circuits get a lot of these petitions for review. While your petition for review is pending in a court of appeals, you can also file a motion to reopen or reconsider with the BIA or with the IJ. And the Supreme Court was clear in, sorry, let me grab the citations for you. I believe the case is called Stone. It might be a 1998 Supreme Court case that the filing of that motion to reopen or reconsider doesn't stay the court of appeals jurisdiction. And in fact, yeah, it's Stone v. INS 514 U.S. 386. It's a 1995 case. And in fact, courts of appeals have further recognized that if the motion to reopen is granted and they reopen the case, the court of appeals loses jurisdiction because you'd be appealing from your removal order that's no longer final because they've reopened your case. But the court of appeals are split on whether the grant of a motion for reconsideration by the Board of Immigration Appeals would actually stay the case or would merely moot it given that the reconsideration may sort of reaffirm your final removal order. I realize it's not a perfect analogy, but it is a situation in which you can file a motion to reopen or reconsider while the case is pending in another court and it doesn't impact it until there's actual reopening or reconsideration that gives you some sort of relief that would make that prior determination non-final. Similar to, I think, a 60B motion that was granted that altered the judgment or amended the judgment and it erased the money damages, the collection would have continued, but there would no longer be once the 60B was ruled on that prior judgment's not the final judgment. If the court has no further questions, we think for the reasons stated in our brief and in the thoughtful opinions of Judge Boasberg that you should affirm. And again, my condolences to the court on the passing of Judge Williams. This is the first time I've been in the court since he passed and I had the pleasure to argue in front of him and meet him many times. It's truly a loss both to the court and to the legal community. So thank you. Thank you, Mr. Glover. Mr. LaPierre, I'm not sure you have any time left, but do you want to take a couple minutes? If I may take a minute or two, Your Honor. Yes. Your Honor, this case was decided on the motion to dismiss and motion for judgment on the pleadings. So the facts with the complaint are assumed to be correct. It's our position that the complaint states that there were some pending appeals that were due a final decision on the merits. And at heart, Your Honor, that is the issue here. The plaintiff statewide in this case was due a decision on the merits and that renders a non-final determination that created no claim in the United States, at the very least. There may be some delay. There may be some time out there, but there should not be collections on bond breach determinations that are due some decision on the merits of a review of untimely appeal. And that is the plaintiff's position in this case. Obviously, the Department of Homeland Security, the DHS, disagrees with that, and that interpretation, I think, runs at the heart of this case. There were some underlying concerns about the Perea case, the Perea v. Sessions case in the U.S. I apologize, Sessions being one of them. There was also something, and that did not apply to this case because it was only related to notices to appear for the bonded immigrant. There's a couple of concerns with that. That is one set of issues, and it's actually from one of the first cases. But there's also raised some concerns in these appeals about notices to produce that were being served on the plaintiffs themselves untimely, and that became part of the basis for some of these appeals as well. And there's a series of underlying issues that I think are irrelevant to whether or not the plaintiff has decided or is entitled to a decision on the merits of their untimely but accepted appeals or their untimely appeals at all, and therefore whether or not collections actions should cease, pending either the rejection of those appeals or the approval of those appeals and the overturning of that decision. All right. Thank you. Your case is submitted. Thank you very much.
judges: Henderson, Walker, Ginsburg